1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11   RYAN GUINN, an individual, on      CIV. NO. 2:16-325 WBS EFB
     behalf of himself, and, and
12   on behalf of all other persons
     similarly situated,
13
                    Plaintiffs,          MEMORANDUM AND ORDER RE: MOTION
14                                        FOR PROCEEDING AS COLLECTIVE
         v.                               ACTION AND FOR CLASS
15                                        CERTIFICATION
     SUGAR TRANSPORT OF THE
16   NORTHWEST, INC., a California
     Corporation, et al.,
17
                    Defendants.
18

19

20           Plaintiff Ryan Guinn brings this collective and class

21   action suit against defendants Sugar Transport of the Northwest

22   ("Sugar Transport"), Bronco Wine Company ("Bronco"), and Classic

23   Wines of California ("Classic") for alleged violations of the

24   Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216; the

25   California Labor Code, Cal. Lab. Code §§ 201, 203, 204, and 512;

26   and California's Unfair Competition Law ("UCL"), Cal. Bus. &

27   Prof. Code § 17200, et seq.  Presently before the court is

28   plaintiff's Motion for Proceeding as a Collective Action under

                                    1

1   the FLSA and for Class Certification pursuant to Federal Rule of

2   Civil Procedure 23 ("Rule 23") with regard to his state law

3   claims.  (Docket No. 70.)

4   I.   Factual and Procedural Background

5        From December 2002 through June 2006, and again from

6   April 2008 through February 6, 2015, plaintiff was employed by

7   Sugar Transport as a truck driver.  (Pl. Decl. ¶3 (Docket No. 70-

8   2).)[1]  On May 1, 2008, Sugar Transport contracted with Bronco and

9   Classic[2] to provide "hiring, training, supervising and

10  disciplining of all drivers."  (Decl. of John Riella ("Riella

11  Decl.") ¶ 2, Ex. A.)  Approximately 40 Sugar Transport drivers

12  were assigned to the Bronco contract at a given time.  (Id. ¶ 3.)

13  Over the course of the proposed class period, Sugar Transport

14

---

15       [1]   Sugar Transport objects to most of the documentary
    evidence that plaintiff offers in support of his motion, arguing
16  that it does not satisfy the requirements of the Federal Rule of
    Evidence.  See generally Sugar Transport's Objections to Decls.
17  (Docket Nos. 78-1, 78-2, 78-3.)  However, "evidence presented in
    support of class certification need not be admissible at trial."
18  Pena v. Taylor Farms Pac., Inc., 305 F.R.D. 197, 205 (E.D. Cal.
    2015), appeal dismissed (June 5, 2015), order clarified sub nom.
19  Carmen Pena v. Taylor Farms Pac., Inc., Civ. No. 2:13-1282 KJM
    AC, 2015 WL 12550898 (E.D. Cal. Mar. 30, 2015), and aff'd, 690 F.
20  App'x 526 (9th Cir. 2017) (internal citations omitted).
    Accordingly, the court need not address any of Sugar Transport's
21  objections at this stage.
22
         [2]   Classic is a wholly-owned subsidiary that was a
23  wholesaler of wines for Bronco.  (Decl. of Ian A. Kass ("Kass
    Decl.") ¶ 6.)  Throughout this memorandum, "Bronco" refers to
24  both Bronco and Classic.  Plaintiff argues that each driver was
    jointly employed by Sugar Transport, Bronco, and Classic.
25  However, the court need not address the merits of plaintiff's
    joint employer argument because even if the court accepted this
26  contention, it would still deny the Motion on other grounds
    discussed herein.
27

28

2

1    employed approximately 55 drivers.  (Kass Decl. ¶ 9, Ex. IAK-2,

2    Defs.' Resp. to Pl.'s Req. for Admis., Set No. Two (Docket No.

3    70-5).)  At all times during the proposed class period, Sugar

4    Transport uniformly classified all of its drivers as exempt from

5    overtime pay.  (Decl. of Mark Stephens ("Stephens Decl.") ¶ 8.)

6         The principal job functions of all of the drivers were

7    the same.  They began their workdays at their assigned terminal

8    by reviewing their cargo.  (Stephens Decl. ¶ 4.)  After the

9    trucks had been loaded and the cargo confirmed, the drivers would

10   spend most of their day driving to the stores and retailers along

11   their routes, delivering cases of wine.  (Id.)  Defendants

12   scheduled the deliveries for all of the drivers.  (Stephens Decl.

13   ¶ 3; Kass. Decl., Ex. IAK-2 at 5:8-23.)  Sugar Transport informed

14   all of the drivers who serviced Bronco that, as part of their

15   schedule, they "were required to take a 30 minute break between

16   the 3rd and 5th hour of the workday."  (Stephens Decl. ¶ 9.)

17   Once the drivers had completed the day's deliveries, they would

18   each return to their assigned terminal, clean their truck, and

19   complete and submit their day-end paperwork.  (Id.)

20         On October 23, 2015, plaintiff filed a putative class

21   and collective action specifically alleging that Sugar Transport

22   had (1) failed to pay overtime wages in violation of the FLSA;

23   (2) failed to timely pay wages in violation of California Labor

24   Code § 204; (3) failed to timely pay wages due at termination in

25   violation of California Labor Code §§ 201 and 203; (4) failed to

26   provide meal and rest periods in violation of California Labor

27   Code § 512; (5) and engaged in unlawful and unfair business

28   practices in violation of Business and Professions Code §§ 17200.

1  (Docket No. 1-1.)  On January 24, 2017, plaintiff filed an

2  Amended Complaint ("FAC") that added Bronco and Classic as

3  defendants in the lawsuit.  (FAC ¶ 12 (Docket No. 51).)

4  II.  FLSA Collective Action

5       A.    Legal Standard

6            The FLSA provides recourse to an employee against an

7  employer who fails to pay requisite overtime wages.  See 29

8  U.S.C. § 207.  Employees may bring suits for violations of the

9  FLSA on their own behalf and on behalf of "other employees

10  similarly situated."  29 U.S.C. § 216(b).  Though one employee

11  may maintain an FLSA collective action, each employee who wishes

12  to join in the action must affirmatively "opt in" to the action

13  by executing a written consent to become a party to the lawsuit.

14  Id.; Kinney Shoe Corp. v. Vorhes, 564 F. 2d 859, 861 (9th Cir.

15  1977).

16       B.    Similarly Situated

17            The FLSA does not define the term "similarly situated,"

18  nor has the Supreme Court or the Ninth Circuit offered further

19  clarification.  See Knight v. City of Tracy, Civ. No. 2:16-1290

20  WBS EFB, 2016 WL 6666812 (E.D. Cal. Nov. 10, 2016).  However, the

21  Supreme Court has indicated that a proper collective action

22  encourages judicial efficiency by addressing in a single

23  proceeding claims of multiple plaintiffs who share "common issues

24  of law and fact arising from the same alleged [prohibited]

25  activity."  Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165,

26  170 (1989).  "A majority of courts have adopted a two-step

27  approach for determining whether a class is 'similarly

28  situated.'"  Murillo v. Pac. Gas & Elec. Co., Civ. No. 2:08-1974

4

1   WBS GGH, 2010 WL 2889728, at *2 (E.D. Cal. July 21, 2010).  Under

2   this approach, the district court must first determine whether

3   the proposed class should be notified of the action.  It has been

4   more than one year since this court approved the notice and thus

5   step one is satisfied.  (Docket No. 16.)  During the second step,

6   the court makes a factual determination about whether the

7   plaintiffs are similarly situated by weighing the following

8   factors: "(1) the disparate factual and employment settings of

9   the individual plaintiffs, (2) the various defenses available to

10  the defendant which appear to be individual to each plaintiff,

11  and (3) fairness and procedural considerations."  Bishop v.

12  Petro-Chemical Transport, LLC, 582 F. Supp. 2d 1290, 1294 (E.D.

13  Cal. 2008).

14          Under the FLSA, employers are required to pay employees

15  overtime for hours worked in excess of 40 hours per week.  29

16  U.S.C. § 207(a)(1).  However, defendants argue that in this case

17  the FLSA overtime requirement does not relate to all of the

18  drivers because the federal Motor Carrier Act ("MCA") exemption,

19  which exempts employees who are engaged in the interstate

20  transportation of goods from the FLSA overtime requirement,

21  applies to some of the drivers.  See 29 U.S.C. § 213(b)(1).

22  Defendants contend that class members' claims turn on case-by-

23  case, fact specific analyses of whether each driver is exempt

24  from the overtime requirement.

25          Plaintiff counters that, in fact, none of the drivers

26  qualified for this exemption.  As evidence, plaintiff states

27  that, according to declarations, none of the drivers ever crossed

28  California's state lines when driving for Sugar Transport, and

                              5

1  thus did not engage in interstate transportation. (Pl.'s Mem. of

2  P. & A. at 13.)  Plaintiffs further contend that, according to

3  the Ninth Circuit, "an employee's minor involvement in interstate

4  commerce does not necessarily subject that employee to the [MCA

5  exemption] for an unlimited period of time . . . and if the

6  employee's minor involvement can be characterized as de minimis,

7  that employee may not be subject to the [exemption] at all."

8  Reich v. American Driver Service, Inc., 33 F.3d 1145, 1155 (9th

9  Cir. 1994).  From this, plaintiff argues that more than a mere

10  "reasonable expectation" of engaging in interstate commerce is

11  required for the MCA exemption to apply.

12        However, at this stage of the analysis plaintiff has

13  the burden of proving that the class satisfies the "similarly

14  situated" requirement.  Vasquez v. Coast Valley Roofing, Inc.,

15  670 F. Supp. 2d 1114, 1123-24 (E.D. Cal. 2009), citing Hipp v.

16  Liberty Nat. Life. Ins. Co., 252 F.3d 1208, 1217 (11th Cir.

17  2001).  Thus, the court need not determine whether each driver in

18  fact is subject to the Motor Carrier Act exemption, but instead

19  need only determine whether a decision to apply the exemption

20  would require an individual analysis or whether, based on

21  evidence presented by plaintiff, the drivers are sufficiently

22  "similarly situated."  Here, plaintiff's attempt to establish

23  that the class is "similarly situated" is based entirely upon the

24  fact that the drivers never crossed California state lines.

25  However, drivers do not need to actually cross state lines in

26  order to qualify for this exemption; it is sufficient that

27  drivers "hauled goods in the practical continuity of movement in

28

1  interstate commerce."[3]  Bishop, 582 F. Supp. 2d at 1298.

2  Accordingly, the fact that the drivers may not have left

3  California does not mean that none of them engaged in interstate

4  commerce and thus that they are "similarly situated" for the

5  purposes of this exemption.

6         Instead, the court would need to engage in an

7  individualized analysis to determine which, if any, of the

8  drivers could in fact be categorized as exempt from the FLSA.  It

9  was not uncommon for drivers to "deliver product from out of

10 state and out of the country."  (Decl. of Kimberley McKenna

11 ("McKenna Decl.") ¶ 3 (Docket No. 79-7).)  Additionally, drivers

12 sometimes delivered wine to San Francisco International Airport

13 or Los Angeles International Airport, clearly indicating that

14 this product was bound for interstate transport.  (Mitts Decl. ¶

15 14.)  Thus, the mere fact that the drivers did not leave the

16 state is insufficient to demonstrate that they are similarly

17 situated--the court finds it likely that some of the drivers

18 qualified for the exemption while others did not.

19        Plaintiff's primary objection to defendants' argument

20 is not that defendants misstate the law, but rather that the

21 evidence defendants have is insufficient to establish that the

22

23       [3]    "The Ninth Circuit has ruled that intrastate deliveries
   may be considered in the stream of interstate commerce if the
24 property in question originated from out-of-state, and the
   intrastate portion of the route is merely part of the final phase
25 of the unmistakably interstate transport."  Bishop, 582 F. Supp.
   2d at 1302 (citing Klitzke v. Steiner Corp., 110 F.3d 1465, 1469-
26 70 (9th Cir. 1997).)  In such instances, "the transportation is
   considered part of a 'practical continuity of movement' across
27 state lines."  Id.

28

1  MCA exemption applied.  See Pl.'s Reply at 4-5.  However, whether

2  or not defendants are ultimately able to prove that the exemption

3  applies is irrelevant at this point because plaintiff maintains

4  the burden of proving that the drivers are "similarly situated."

5  Notably, all of the cases plaintiff cites to are district court

6  cases and are unrelated to the certification stage of the

7  process.  Rather, plaintiff relies only on unpublished cases

8  involving summary judgment, in which the court held that there

9  was a de minimis limitation to the MCA exemption.  See, e.g.,

10  Robinson v. Open Top Sightseeing San Francisco, LLC, 2017 WL

11  2265464, at *7-8 (N.D. Cal. May 24, 2017); Veliz v. Cintas Corp.,

12  2009 WL 1107702, at *4-8 (N.D. Cal. 2009).)

13       The fact that a defendant could not get beyond the

14  summary judgment stage due to a failure to indicate more than de

15  minimis interstate transport does not establish that the drivers

16  are similarly situated.  In fact, one of the cases that plaintiff

17  himself cites states that "[d]istrict courts following Reich [a

18  Ninth Circuit opinion] have understood the MCA exemption to apply

19  on a driver-by-driver basis."  Robinson, WL 2265464, at *7.

20  Thus, although it is correct that at trial defendants would

21  ultimately need to show that each driver has a more than

22  happenstance possibility of driving product over state lines or

23  that he "participated in more than a de minimis level of

24  interstate activity," Veliz, 2009 WL 1107702, at *9, that rule

25  does nothing to change the fact that an individual analysis of

26  each driver would still be necessary in order to determine

27  exactly which drivers engaged in sufficient interstate commerce

28  activities such that there payment was not governed by the FLSA.

8

1    Accordingly, plaintiff has failed to satisfy the "similarly

2    situated" requirement and his Motion to Proceed as a FLSA

3    Collective Action must therefore be denied with regard to all

4    defendants.[4]

5    III.  Class Certification for State Law Claims

6          A.    Legal Standard

7                To certify a class pursuant to Rule 23, plaintiff must

8    satisfy the four requirements set forth in Rule 23(a):

9    "numerosity," "commonality," "typicality," and "adequacy of

10   representation."  Fed. R. Civ. P. 23(a).  Plaintiff must also

11   establish an appropriate ground for bringing a class action under

12   Rule 23(b).  Fed. R. Civ. P. 23(b).

13               "Rule 23 does not set forth a mere pleading standard. A

14   party seeking class certification must affirmatively demonstrate

15   his compliance with the Rule."  Wal-Mart Stores, Inc. v. Dukes,

16   564 U.S. 338, 350 (2011).  "[C]ertification is proper only if the

17   trial court is satisfied, after a rigorous analysis, that the

18   prerequisites of Rule 23(a) have been satisfied."  Id. at 350-51

19   (citation omitted).  "Frequently that rigorous analysis will

20   entail some overlap with the merits of the plaintiff's underlying

21   claim."  Id. at 351 (citation omitted).  "Merits questions may be

22   considered to the extent--but only to the extent--that they are

23   relevant to determining whether the Rule 23 prerequisites for

24

25          [4]    Plaintiff's failure to satisfy the "similarly situated"
26   requirement is dispositive and therefore the court need not
     address defendants' argument to the effect that at the time the
27   notice went out Sugar Transport was the only defendant, so that
     the class members were not given the choice whether or not to
28   opt-in the suit as against the other defendants.

1    class certification are satisfied."  Amgen Inc. v. Conn. Ret.

2    Plans & Tr. Funds, 133 S. Ct. 1184, 1195 (2013).

3         B.    Class Definitions

4              Plaintiff seeks to certify two different classes

5    related to his state law claims.  First, plaintiff requests

6    certification of a class for his overtime claims ("the overtime

7    class") consisting of:

8         All persons employed by SUGAR TRANSPORT OF THE NORTHWEST,
          and jointly employed by BRONCO WINE COMPANY and CLASSIC
9         WINES OF CALIFORNIA, as a driver, or any other job title the
          principal job functions of which are the same as those
10        performed by its drivers, in California, and who worked more
          than forty hours during at least one workweek at any time on
11        and after October 23, 2011.

12

13   (Pl.'s Notice of Mot. at 2 (Docket No. 70).)

14             Plaintiff also seeks certification of a class for his

15   meal and rest break claims ("the meal and rest period class")

16   consisting of:

17        All persons employed by SUGAR TRANSPORT OF THE NORTHWEST,
          and jointly employed by BRONCO WINE COMPANY and CLASSIC
18        WINES OF CALIFORNIA as a driver, or any other job title the
          principal job functions of which are the same as those
19        performed by its drivers, in California, at any time on and
          after October 23, 2011.

20

21   (Id.)[5]

22        C.    Rule 23(a)

     _____

23        [5]    In his Memorandum of Points and Authorities, plaintiff
     defines both classes in a more general manner, stating that the
24   classes consist of "all persons employed by SUGAR TRANSPORT OF
     THE NORTHWEST," and does not confine the class to those drivers
25   who worked for Bronco or Classic.  (Pl.'s Mem. of P. & A. at 4.)
     Accordingly, there is some debate as to the true definition of
26   plaintiff's classes.  However, the court finds that even if
     plaintiff were provided the opportunity to modify its class
27   definitions, doing so would not cure all of the defects of this
     Motion.
28
                                   10

1          1.   Numerosity

2          Rule 23(a)(1) requires the proposed class to be so

3   numerous that joinder of all of the class members would be

4   impracticable.  Fed. R. Civ. P. 23(a).  "[N]umerosity is presumed

5   where the plaintiff class contains forty or more members."  In re

6   Cooper Companies Inc. Sec. Litig., 254 F.R.D. 628, 634 (C.D. Cal.

7   2009); see also, e.g., Collins v. Cargill Meat Solutions Corp.,

8   274 F.R.D. 294, 300 (E.D. Cal. 2011) (Wagner, J.).  Plaintiff's

9   proposed class includes 55 individuals.  (See Pl.'s Mem. of P.&A.

10  at 6; see also Defs.' Resp. to Pl.'s Req. for Admis., Set No. 2.)

11  Accordingly, plaintiff has satisfied the "numerosity"

12  requirement.

13         2.   Commonality

14         The "commonality" requirement of Rule 23(a)(2) requires

15  that plaintiff show that "there are questions of law or fact

16  common to the class."  Fed. R. Civ. P. 23(a)(2).  "All questions

17  of fact and law need not be common to satisfy [Rule 23(a)(2)].

18  The existence of shared legal issues with divergent factual

19  predicates is sufficient, as is a common core of salient facts

20  coupled with disparate legal remedies within the class."  Hanlon

21  v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  "What

22  matters to class certification . . . [is] the capacity of a

23  classwide proceeding to generate common answers apt to drive the

24  resolution of the litigation."  Dukes, 564 U.S. at 350.  Class

25  members' claims "must depend upon a common contention . . . [that

26  is of] such a nature that it is capable of classwide resolution--

27  which means that determination of its truth or falsity will

28  resolve an issue that is central to the validity of each one of

1  the claims in one stroke."  Id.

2           Here, plaintiff contends that common questions of law

3  and fact exist with regard to whether defendants failed to

4  provide meal breaks and rest periods for the drivers, failed to

5  provide them with overtime pay, and whether these practices are

6  unlawful under California law and constitute violations of

7  California's Labor Code and the UCL.  "Plaintiff's claims, as

8  pled, share a common question of law--whether any of the

9  practices [defendants are] alleged to have engaged in constitute

10  violations of California law--and at least some of the facts to

11  be analyzed with respect to this question are the same."

12  Washington v. Joes Crab Shack, 271 F.R.D 629, 636 (N.D. Cal.

13  2012).  Accordingly, the court can resolve this central question

14  once for all class members, and thus plaintiff has met the

15  "commonality" requirement.

16           3.   Typicality

17           The "typicality" requirement of Rule 23(a)(3) requires

18  that plaintiff have claims "reasonably coextensive" with those of

19  proposed class members.  Hanlon, 150 F.3d at 1020.  The test for

20  "typicality" is "whether other members have the same or similar

21  injury, whether the action is based on conduct which is not

22  unique to the named plaintiffs, and whether other class members

23  have been injured by the same course of conduct."  Hanon v.

24  Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citation

25  omitted).  "Some degree of individuality is to be expected in all

26  cases, but that specificity does not necessarily defeat

27  typicality."  Stanton v. Boeing Co., 327 F. 3d 938, 957 (9th Cir.

28  2003).

                              12

1    Here, plaintiff alleges that defendants did not provide

2    him and the proposed class with the requisite overtime pay or

3    sufficient breaks during their shifts.  (See Pl.'s Mem. of P.&A.

4    at 12-13.)  Even if plaintiff and members of the class did not

5    suffer the same damages from the alleged violations, they,

6    according to plaintiff, suffered the same injuries (i.e., breach

7    of labor laws and business code provisions) from the same action

8    (i.e., defendants' failure to provide proper working conditions

9    and payment) and seek to recover pursuant to the same legal

10   theories.  From this, the court concludes that plaintiff's claims

11   are "sufficiently parallel [to other members' claim] to insure a

12   vigorous and full presentation of all claims for relief."

13   California Rural Legal Assistance, Inc. v. Legal Servs. Corp.,

14   917 F.2d 1171, 1175 (9th Cir. 1990).  Accordingly, because

15   plaintiff has demonstrated that he "possess[es] the same

16   interest[s] and suffer[s] the same injury as the class members,"

17   Gen. Tel. Co. of Sw v. Falcon, 457 U.S. 147, 156 (1982), he has

18   satisfied the "typicality" requirement.

19        4.   Adequacy

20        Rule 23(a)(4) requires that the class representative

21   "will fairly and adequately protect the interests of the class."

22   Fed. R. Civ. P. 23.  This inquiry involves two questions: "(1) do

23   the named plaintiffs and their counsel have any conflicts of

24   interest with other class members and (2) will the named

25   plaintiffs and their counsel prosecute the action vigorously on

26   behalf of the class?"  Hanlon, 150 F.3d at 1020.  Adequacy of

27   representation is generally satisfied if the representative's

28   individual interests are the same or similar to the other class

13

1   members.  Falcon, 457 U.S. at 157.

2          Here, plaintiff's claims are similar to those of other

3   class members and he is unaware of any conflicts with them.

4   (Pl.'s Decl. ¶¶ 15-16.)  Moreover, plaintiff has committed

5   significant resources to this case already, including, but not

6   limited to, engaging in numerous communications with counsel,

7   assisting counsel with conducting the investigation, and

8   attending depositions.  (Id. ¶ 17.)  Plaintiff is committed to

9   pursuing the case through to its resolution for the sake of all

10  prospective class members.  (Id.)

11         Plaintiff's counsel are experienced attorneys who have

12  knowledge of class actions and of wage and hour and employment-

13  related claims.  (Kass Decl. ¶¶ 2-5.)  The court finds no reason

14  to doubt that plaintiff's counsel are qualified to conduct this

15  litigation and will vigorously prosecute the action on behalf of

16  class members.  See Hanlon, 150 F.3d at 1021 ("Although there are

17  no fixed standards by which 'vigor' can be assayed,

18  considerations include competency of counsel.").  Accordingly,

19  the court finds that plaintiff and plaintiff's counsel are

20  adequate representatives of the class, and therefore that

21  plaintiff has satisfied all of the requirements set forth in Rule

22  23(a).

23         D.    Rule 23(b)

24         Plaintiff seeks to certify a class pursuant to Rule

25  23(b)(3), which requires that "questions of law or fact common to

26  class members predominate over questions affecting only

27  individual members, and . . . a class action is superior to other

28  available methods for fairly and efficiently adjudicating the

                                  14

1  controversy."  Fed. R. Civ. P. 23(b)(3).

2        1.    Predominance

3        The "predominance" inquiry "tests whether proposed

4  classes are sufficiently cohesive to warrant adjudication by

5  representation."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591,

6  623 (1997).  "Because Rule 23(a)(3) already considers

7  commonality, the focus of the Rule 23(b)(3) predominance inquiry

8  is on the balance between individual and common issues."  Murillo

9  v. Pac. Gas & Elec. Co., 266 F.R.D. 468, 476 (E.D. Cal. 2010)

10  (citing Hanlon, 150 F.3d at 1022).  This rule "requires a

11  district court to formulate some prediction as to how specific

12  issues will play out in order to determine whether common or

13  individual issues predominate in a given case."  Dukes v. Wal-

14  Mart Stores, Inc., 603 F. 3d 571, 593 (9th Cir. 2010), rev'd on

15  other grounds, 564 U.S. 338 (2011).  The "predominance"

16  requirement is "far more demanding" than the commonality

17  requirement of Rule 23(a).  Amchem Prods., 521 U.S. at 623.

18        a.    The Meal and Rest Period Class

19        In a class certification motion, "the crucial issue

20  with regard to the meal break claim is the reason that a

21  particular employee may have failed to take a meal break."

22  Washington v. Joe's Crab Shack, 271 F.R.D. 629, 641 (N.D. Cal.

23  2010).  Here, plaintiff has not identified a specific policy that

24  precluded the drivers from taking a break.  In fact, to the

25  contrary, Sugar Transport had a policy that required its drivers

26  to take their lawful breaks and shared this policy with drivers

27  through written notices, verbal discussions, and posted wage

28  orders.  (Mitts Decl. ¶ 15.)  "In the absence of any common

15

1    policy, an individualized inquiry will be required to determine

2    whether any single employee failed to take a meal break," and the

3    reasoning behind such failure.  Joe's Crab Shack, 271 F.R.D. at

4    641.[6]  Accordingly, the determination of whether a break was

5    missed, and why, would involve an individual analysis into the

6    daily behavior of each particular driver.

7           In this case, each driver was assigned to deliver

8    different product, to different customers, in different areas of

9    California.  (Patterson Decl. ¶ 3, Ex. B.)  Drivers' schedules

10   could be changed for a variety of reasons, including traffic,

11   problems with the truck, or an issue with a particular customer.

12   Moreover, the drivers themselves have expressed various reasons

13   for choosing to skip meal breaks, including wanting to finish

14   their deliveries more quickly so they could go home.  (Id. ¶ 4,

15   Ex. C; ¶ 5, Ex. D.)  "[P]laintiff must do more than show that a

16   meal break was not taken to establish a violation.  Instead, he

17   must show that [defendants] impeded, discouraged, or prohibited

18   [drivers] from taking a proper break."  Joe's Crab Shack, 271

19   F.R.D. at 641.  Although plaintiff argues that Sugar Transport's

20   delivery schedules impeded the ability of drivers to take meal

21   and rest breaks, the evidence indicates that in fact the drivers

22   themselves had discretion to decide when and if to take such a

23   break.  In order for plaintiff to establish otherwise, the court

24   _____

25   [6]    Notably, "courts have not hesitated to grant summary
     judgment where plaintiffs have skipped breaks of their own accord

26   due to pressure they feel to complete their job in a given amount
     of time, absent evidence that their employer took action to

27   prevent or impede employees from taking their meal or rest
     breaks."  Cleveland Grocerworkeres.com LLC, 200 F. Supp. 3d 924,

28   946 (N.D. Ca. 2016).

                                    16

1   would need to analyze each particular driver and determine

2   whether or not, and why, he missed breaks.  Accordingly, with

3   regard to plaintiff's meal and rest claims, plaintiff has not

4   satisfied the predominance component and therefore cannot comply

5   with Rule 23(b).

6                   b.   The Wage Class

7            Plaintiff's wage claim, which he brings under both the

8   FLSA--as discussed above in reference to the collective action--

9   and the Business and Professions Code §§ 17200, et seq., centers

10  around whether the drivers were exempt from overtime pay.

11  Section 17200 prohibits any unfair competition, which is defined

12  as "any unlawful, unfair or fraudulent business act or practice."

13  Cal-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th

14  163, 180 (1990).  Section 17200 "borrows violations of other laws

15  and treats them as unlawful practices" that then become

16  independently actionable.  Id.  Here, plaintiff borrows from the

17  provisions of the FLSA to bring a state claim under § 17200.

18  Thus, plaintiff is essentially attempting to certify two separate

19  actions based on the FLSA: (1) a collective action based on

20  allegations that Sugar Transport failed to pay the drivers

21  overtime, and (2) a Rule 23 class action based upon the same

22  alleged violations.

23           As discussed above, determining whether the drivers

24  were exempt from the FLSA overtime requirement would entail an

25  individualized analysis and determination as to which of the

26  drivers, if any, engaged in interstate transportation.

27  Therefore, for the same reason that plaintiff did not satisfy the

28  "similarly situated" requirement necessary to maintain a FLSA

1   collective action, he has also failed to demonstrate that common

2   issues would predominate over individual questions with regard to

3   his state law overtime claim as well.[7]

4            IT IS THEREFORE ORDERED that plaintiff's Motion for

5   Proceeding as a Collective Action under the FLSA and for Class

6   Certification pursuant to Federal Rule of Civil Procedure 23 be,

7   and the same hereby is, DENIED.

8   Dated:   December 20, 2017

9                                           WILLIAM B. SHUBB
                                            UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26            [7]      Rule 23(b)(3) also requires that a class action be the

27   superior means of adjudication.  However, plaintiff's failure to
     satisfy the predominance requirement is dispositive and therefore

28   the court need not address the superiority requirement.

                                    18